UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80275-ELFENBEIN

**HECTOR R. APONTE**,

    Plaintiff,

v.

**MICHELLE KING**,[1]
**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff Hector R. Aponte's ("Plaintiff") Motion for Summary Judgment, ECF No. [15]. Defendant Michelle King, Acting Commissioner of Social Security Administration ("Defendant"), filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (the "Response"), ECF No. [18],[2] to which Plaintiff filed a Reply to Defendant's Motion for Summary Judgment and to Defendant's Response to Plaintiff's Motion for Summary Judgment (the "Reply"), ECF No. [20]. The Parties have not objected to the undersigned's jurisdiction and, therefore, have consented to it. *See* ECF No. [4] at 2 ("If no party objects to Magistrate Judge jurisdiction within this timeframe, then this case will proceed in full before the undersigned Magistrate Judge for all purposes, including entering any dispositive order and final judgment.").

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle King should be substituted as the defendant in this suit.

[2] The filing at ECF No. [19] is identical to the one at ECF No. [18].

CASE NO. 24-CV-80275-ELFENBEIN

Having reviewed the Parties' filings, the record, and the relevant law, the Court **DENIES** Plaintiff's Motion for Summary Judgment, **GRANTS** Defendant's Motion for Summary Judgment, and **AFFIRMS** the Administrative Law Judge's Decision ("ALJ's Decision").

## I. BACKGROUND

On October 4, 2021, Plaintiff applied for disability insurance benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability based on (1) bilateral knee arthritis that began on September 29, 2021, following his total knee replacement to his right knee, (2) degenerative changes of the lumbar and thoracic spine, (3) obesity, and (4) asthma. *See* ECF No. [6] at 185-94, 207, 222-24, 227-34. The Social Security Administration ("SSA") initially denied Plaintiff's disability application on January 11, 2022, and again upon reconsideration on July 6, 2022. *See id.* at 93-98, 107-08. Thereafter, on July 20, 2022, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on May 1, 2023. *See id.* at 101-04, 106. The ALJ issued a partially favorable decision on March 10, 2023, finding Plaintiff disabled from March 12, 2023, onwards based on Plaintiff's change in age status. *See id.* at 20-39. The Appeals Council denied Plaintiff's request for review on January 25, 2024, thus making the ALJ's decision final. *See id.* at 5-10.

## II. LEGAL STANDARDS

### A. <u>Judicial Review of Claims under the Act</u>

A court's review of an ALJ's decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her determination. *See Biestek v. Berryhill*, 587 U.S. 97, 104 (2019). Moreover, the Court will affirm an ALJ's decision so long as it is supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's

decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quotation marks omitted)).

The standard for substantial evidence requires more than a mere scintilla and necessitates relevant evidence that a reasonable person would accept as sufficient to uphold a conclusion. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (finding that substantial evidence is "more than a scintilla, but less than a preponderance"). Courts "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if the evidence leans against the ALJ's decision, the court must uphold it if substantial evidence supports it. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).

### B.    Regulatory Framework for Weighing Medical Opinions

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. § 404.1513(a). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace). 20 C.F.R. § 404.1513(a)(2).

Relevant here, in weighing medical opinions for claims filed after March 27, 2017, the treating source rule has been eliminated.[3] *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either

---

[3] For claims filed before March 27, 2017, the treating source rule generally required ALJs to give "controlling weight" to a treating source's opinion absent good cause. 20 C.F.R. § 404.1527(c)(2).

assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."); *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020). Under the revised regulations, while a medical source's treatment relationship with a claimant remains a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is no longer entitled to controlling weight or deferential treatment. *See Ramos*, 2021 WL 5746358, at *9; *Bonilla*, 2020 WL 9048787, at *4. Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion is: (i) supported by objective medical evidence and the source's explanation of his opinion; and (ii) consistent with other evidence in the medical record. 20 C.F.R. § 404.1520c(c)(1)-(2). These factors, referred to as "supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[4] 20 C.F.R. § 404.1520c(b)(2); *see Matos*, 2022 WL 97144, at *4; *Bonilla,* 2020 WL 9048787, at *4. Additional factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(3)-(5). In addition, while the ALJ must articulate how he considered medical opinions from all medical sources, the ALJ need only explain his consideration of the supportability and consistency factors. *See Bonilla,* 2020 WL 9048787, at *5; 20 C.F.R. § 404.1520c(b)(2).

---

[4] "Supportability" refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). "Consistency" looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinions presented. 20 C.F.R. § 404.1520c(2).

4

CASE NO. 24-CV-80275-ELFENBEIN

### C. The SSA's Sequential Evaluation for Disability Claims

To be eligible for benefits, a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. § 423. A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

To determine a claimant's eligibility for DIB, the ALJ employs a five-step sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). At the ***first step***, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any."). If so, a finding of "no disability" is made. *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must proceed to the ***second step*** and determine whether the claimant suffers from a "severe impairment." *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s)."). An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c) (stating that an impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities"). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.* ("If you do not have any impairment or combination of impairments . . . , we will

5

find that you . . . are [] not disabled. . . . However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.").

The ***third step*** requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

If a claimant's impairment does not meet or equal those listed in Appendix 1 of the Regulations, the ALJ must proceed to ***step four***. *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record[.]"). Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. *See id.* The Regulations define RFC as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 404.1545(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. *See* 20 C.F.R. § 404.1520(f) ("If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment,

which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work."). If so, the claimant is found not disabled. *See* 20 C.F.R. § 404.1520(f) ("If you can still [perform past relevant] work, we will find that you are not disabled.").

If the claimant establishes an inability to return to past relevant work, the inquiry turns to **step five**. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale*, 831 F.2d at 1011). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.*

## III.   THE ALJ'S DECISION

ALJ Kenneth Theurer (the "ALJ"), on May 15, 2023, entered a partially favorable decision, finding Plaintiff disabled from March 12, 2023, through to the present. *See* ECF No. [6] at 18, 24.[5] In reaching this conclusion, the ALJ employed the SSA's five-step sequential evaluation outlined above.

At **step one**, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since September 29, 2021, the alleged onset date[.]" *Id.* at 25 (citation omitted). At **step two**, the ALJ concluded that from the "alleged onset date of disability, September 29, 2021," Plaintiff suffered from "the following severe impairments: [1] bilateral osteoarthritis of the knee status post right total knee replacement in September 2021, [2] degenerative disc disease of the lumbar spine, [3] obesity, and [4] asthma[.]" *Id.* (citing 20 C.F.R. § 404.1520(c)).

---

[5] The references to page numbers from the record refer to the CM-ECF page numbers.

At ***step three***, the ALJ concluded that Plaintiff's impairments failed to meet the criteria listed in Appendix 1 of the Regulations from September 29, 2021, to the present. *See id.* at 26, 32. In making this finding, the ALJ considered the listings that most closely aligned with Plaintiff's alleged impairments, which included "listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.18 (abnormality of a major joint in any extremity), and 3.03 (asthma) in conjunction with [his] obesity." *Id.* at 26. The ALJ explained that his review of Plaintiff's medical records did "not show consistent findings of motor deficits, sensory abnormalities, and reflex loss" and, therefore, did not support a finding that his impairments met any of those listings. *Id.* (citation omitted).

Because Plaintiff's impairments did not meet or equal any of the Listings in Appendix 1 of the Regulations, the ALJ proceeded to ***step four*** of the SSA's five-step sequential analysis and found that Plaintiff had the RFC to perform light work "as defined in 20 CFR 404.1567(b) except he [could] [1] occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, stand or walk for approximately four hours in eight-hour day with normal breaks; [2] occasionally climb ramps or stairs; [3] never climb ladders, ropes or scaffolds; and [4] perform occasional balancing, stooping, kneeling, crouching, and crawling." *Id.* at 26. The ALJ also found Plaintiff did not have the RFC to perform work that required "exposure to extremes of cold" and "to concentrations of smoke, dust, and respiratory irritants[.]" *Id.* (citation omitted). Finally, the ALJ found that Plaintiff required "the use of a cane to ambulate on rough or uneven surfaces." *Id.* In making these findings, the ALJ considered all of Plaintiff's alleged impairments against the medical evidence before him.

First, the ALJ's RFC analysis considered Plaintiff's arthritic knees. *See id.* at 27. Relating to this impairment, the ALJ considered the medical opinions of four physicians. The ALJ first

considered the opinion of Plaintiff's orthopedic surgeon, Daniel DiChristina, M.D., and stated that he was "partially persuaded" by Dr. DiChristina's opinion because he is a treating specialist and because his treatment notes recorded an improvement in Plaintiff's "right knee [] following surgical intervention and physical therapy[.]" *Id.* Next, the ALJ considered the opinions of State Agency medical consultants, R. Reynolds, M.D., and A. Auerbach, M.D., and of a consultative examiner, Elke Lorensen, M.D, which he found to be somewhat persuasive. *See id.* at 28. The ALJ acknowledged that Drs. Reynolds and Auerbach based their opinions "on a review of the record[,]" while Dr. Lorensen based her opinion upon her examination of Plaintiff. *See id.* Drs. Reynolds, Auerbach, and Lorensen all based their opinion on diagnostic imaging and evidence that the claimant's right knee pain improved with surgical intervention and physical therapy. *See id.* Despite relying on similar evidence, Drs. Reynolds, Auerbach, and Lorensen reached differing conclusions concerning Plaintiff's physical limitations in performing work. *See id.* Specifically, Drs. Reynolds and Auerbach opined that Plaintiff "could stand and walk for six hours in an eight-hour workday[,]" while Dr. Lorensen opined that Plaintiff could stand and walk "for four hours in an eight-hour workday[.]" *Id.* (citation omitted). Ultimately, the ALJ found Dr. Lorensen's opinion more persuasive because she had the opportunity to physically examine Plaintiff and her conclusion was more consistent with the medical evidence in the record. *See id.*

Second, the ALJ considered Plaintiff's degenerative disc disease when assessing his RFC. *See id.* The ALJ noted that x-rays of Plaintiff's spine showed (1) "evidence of severe degenerative changes at T11-L1 levels, moderate degenerative change at the L2-4 and L5-S1 levels, and mild degenerative change at L4-5 level" in December 2021, (2) "multilevel spondylotic change with dextroscoliotic curvature" in September 2022, and (3) "significant degenerative disease of the

lumbar spine with degenerative scoliosis" in April 2023. *Id.* To treat these issues, Plaintiff received physical therapy. *See id.*

Third, the ALJ considered Plaintiff's obesity when assessing his RFC. *See id.* The ALJ noted that Plaintiff underwent gastric bypass surgery in 2017 and lost 150 pounds as a result. *See id.* Despite Plaintiff's significant weight loss, Plaintiff remained obese. *See id.* However, the only treatment prescribed for his obesity from September 29, 2021, through March 12, 2023, was eating a healthy diet and exercising. *See id.*

After discussing these three impairments, the ALJ discussed the medical records relating to them. The ALJ referenced medical reports from September 2021, October 2021, March 2022, and September 2022 that documented that (1) Plaintiff's gait had either improved or was normal, (2) Plaintiff had substantial or full range of motion in his right knee, and (3) Plaintiff exhibited no neurological deficits. *See id.* at 29-30. The ALJ also considered medical reports from December 2021 and March 2022 which made mixed findings that (1) Plaintiff's gait was either abnormal or impaired, (2) Plaintiff's range of motion was reduced in the lumbar spine, hips, and knees, (3) Plaintiff maintained full range of motion in his upper extremities, and (4) Plaintiff exhibited no sensory deficits or muscular atrophy. *See id.* Viewing these records in the aggregate, the ALJ concluded that Plaintiff's alleged impairments did not prevent him from performing light exertional work or standing and walking for four hours in an eight-hour workday. *See id.* at 30.

Finally, the ALJ considered whether Plaintiff's asthma when establishing his RFC. *See id.* The ALJ noted that Plaintiff reported to an emergency room on an unspecified date for worsening asthma. *See id.* Despite this development in his condition, Plaintiff's medical records showed that his asthmatic condition was stable without treatment. *See id.* Physical examinations of Plaintiff's lungs showed that they were "clear to auscultation[.]" *Id.* Additionally, Defendant reported in

10

March 2022 that he had not required his inhaler "in several months" for his asthma. *Id.* Based on this record, the ALJ imposed environmental restrictions on Plaintiff's RFC. *See id.*

The ALJ noted that, despite allegedly suffering from the several alleged impairments, Plaintiff maintained a broad range of daily activities, including (1) attending to personal needs, (2) cleaning, (3) shipping, and (4) engaging in leisure activities. *See id.* Plaintiff's physical therapy records also noted that Plaintiff had less difficulty performing daily activities. *See id.* Based on the foregoing evidence, the ALJ concluded that Plaintiff retained the RFC to "perform light work." *Id.* at 31; *see id.* at 29-31.

Considering Plaintiff's RFC to perform light exertional work, the ALJ concluded that Plaintiff lacked the RFC to perform any past relevant work since his alleged disability onset date of September 29, 2021. *See id.* at 31. Because Plaintiff lacked the RFC to perform past relevant work, the ALJ proceeded to ***step five*** of the SSA's five-step sequential analysis. *See id.* Under this step of the SSA's analysis, the ALJ found that from September 29, 2021, to March 12, 2023, there were jobs in significant numbers in the national economy that Plaintiff could have performed. *See id.* The ALJ based this conclusion on testimony given by a vocational expert that Plaintiff could perform work as a (1) marker, (2) garment sorter, and (3) mail clerk/mail sorter. *See id.* at 32. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff was not disabled under the relevant regulatory framework from September 21, 2021, to March 12, 2023, because Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id.* However, after March 12, 2023, Plaintiff's "age category changed," causing the ALJ to conclude that there were "no jobs that exist in significant numbers in the national economy that [Plaintiff] could perform[.]" *Id.* And because there were no jobs Plaintiff could perform based on his "age, education, work experience, and residual functional capacity[,]"

the ALJ determined Plaintiff to be disabled under the controlling regulatory framework from March 12, 2023, to the present. *Id.*

## IV. DISCUSSION

Plaintiff premises his Motion for Summary Judgment on the position that the ALJ improperly assessed the medical opinions of Dr. Lorensen by failing to consider the supportability of those opinions and whether her opinions were consistent with the medical evidence in the record. *See* ECF No. [15-1] at 1. According to Plaintiff, these purported errors left the ALJ's determination of Plaintiff's RFC and the decision as a whole unsupported by substantial evidence. *See id.* Defendant, for its part, opposes Plaintiff's Motion for Summary Judgment, arguing that the ALJ properly assessed the opinion of Dr. Lorensen by considering both supportability and consistency of the opinion. *See* ECF No. [18] at 1. In weighing the reliability of Dr. Lorensen's medical opinion, Defendant noted that Dr. Lorensen had the opportunity to physically examine Plaintiff and that his post-surgical treatment records supported her assessment of Plaintiff's conditions. *See id.* Finally, in reply, Plaintiff reargues the position that the ALJ failed to clearly articulate the evidentiary basis on which he rested his decision. *See generally* ECF No. [20].

The Court denies Plaintiff's Motion for Summary Judgement for three reasons. First, the ALJ properly assessed the reliability of Dr. Lorensen's medical opinions from a supportability and consistency standpoint. Second, substantial evidence supports the ALJ's decision. Third, the ALJ was not required to articulate a logical bridge between the record evidence and his findings.

The bulk of Plaintiff's argument focuses on the ALJ's purported failure to analyze the supportability and consistency factors for the medical opinion of Dr. Lorensen. To recap, the "supportability" factor requires the ALJ to analyze "the extent to which a medical source has articulated support for the medical source's own opinion," while the "consistency" factor requires

12

the ALJ to consider "the relationship between a medical source's opinion and other evidence within the record." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1)-(2)). After carefully reviewing the ALJ's decision and the record in this case, the Court finds that the ALJ did not misapply § 404.1520c and the applicable law.

Starting with the supportability factor, the Court finds that the ALJ adequately decided supportability when considering the various medical opinions in the record. Three of the four physicians the ALJ referenced in his decision opined on Plaintiff's physical limitations following his alleged onset of disability. Drs. Reynolds and Auerbach advised that Plaintiff could "stand and walk for six hours in an eight-hour workday[,]" while Dr. Lorensen stated that Plaintiff had "mild" limitations with prolonged standing and walking, which restricted "him to standing and walking for four hours in an eight-hour workday[.]" ECF No. [6] at 28. The ALJ ultimately concluded that Dr. Lorensen's opinion was more reliable because, unlike Drs. Reynolds and Auerbach, Dr. Lorensen had the opportunity to physically examine Plaintiff on two separate occasions. *See id.* The first occasion was on December 29, 2021 and the other was on May 11, 2022. ECF No. [6] at 369-372, 539-542. And in such examinations, Dr. Lorenson made various findings of improvement in Plaintiff's lower extremities that relate to walking and standing, such as: (1) walking with a "very slight limp" without the use of a cane, (2) walking "even[ly] and normal[ly]" with the cane, (3) determining that "use of the cane is not medically necessary," (4) finding 5/5 strength in his lower extremities, and (5) noting improvement of edema in his ankles. *See* ECF No. [6] at 539-542. Baked into the ALJ's reliability finding is the conclusion that Dr. Lorensen's physical examination of Plaintiff, which noted various points of improvement in ambulation, was reliable support for her opinion on Plaintiff's physical limitation. ECF No. [6] at 369-372, 539-

13

542. The Court also notes that the ALJ relied on Dr. Lorenson's recitation of Plaintiff's activities of daily living in May 2022 when finding additional support for the conclusion that Plaintiff could perform light duty work. Indeed, the ALJ noted that Plaintiff "maintained a broad range of daily activities that is consistent with light work," citing to Plaintiff's statement to Dr. Lorenson during the May 11, 2022 evaluation that he "could attend to his personal needs daily, clean, go shopping, and engage in leisure activities." ECF No. [6] at 30, 540. Accordingly, given Dr. Lorenson's findings of improvement on physical examination and Plaintiff's own recitation of activities of daily living to Dr. Lorenson in May 2022, the ALJ adequately considered the supportability of Dr. Lorensen's opinion that Plaintiff's limitations were less severe in various areas, that his limitation in walking and standing were now "mild," and that he could walk for a total of four hours in an 8-hour work day.

As to the consistency factor, the ALJ's discussion of Dr. Lorensen's opinion in the context of the record evidence "demonstrate[d] that []he fully considered [Dr. Lorensen's] medical opinions in accordance with requirements of 20 C.F.R. § 404.1520c and adequately analyzed whether the opinions of" Dr. Lorensen "were consistent with the record as a whole." *Delgado v. O'Malley*, No. 23-CV-61738, 2024 WL 4186098, at *6 (S.D. Fla. Sept. 2, 2024), *report and recommendation adopted*, No. 23-CV-61738, 2024 WL 4186097 (S.D. Fla. Sept. 13, 2024). The ALJ first explained that the diagnostic images in the record supported Dr. Lorenson's opinions regarding Plaintiff's ambulation. *See* ECF No. [6] at 28. Looking at the diagnostic images on which Dr. Lorenson relied, these consist of: (1) an x-ray dated September 14, 2021 that shows that the right knee joint replacement was "well seated and well aligned;" *see id.* at 300, and (2) an x-ray from May 2022 showing that Plaintiff's prior total knee replacement was in "good anatomic alignment with no evidence of acute fracture, dislocation, destructive bony lesion, or joint

14

effusion[,]" *see id.* at 544. Next, the ALJ noted that Plaintiff's improvement in his right knee pain following surgical intervention and physical therapy was also consistent with Dr. Lorenson's opinion, citing to (1) Dr. DiChristina's September 24, 2021 progress note that he "has made excellent progress thus far," *see id.* at 335, and (2) physical therapy progress notes stating his progress towards his goals remains "good," he was "demonstrating improved strength as he increased weight resistances," and he was making "good progress as he is continually demonstrat[ing] improved strength," *see id.* at 342, 346, 350, 354, 376, and 396. In addition, the ALJ found that Plaintiff's post-surgical treatment records were consistent with Dr. Lorenson's findings, citing to Dr. DiChristina's October 27, 2021 treatment record in which Plaintiff "report[ed] vast improvement," stated "[h]e is pleased with his progress" and "denied any significant pain," and in which Dr. DiChristina concluded that Plaintiff "ha[d] made excellent progress thus far." *Id.* at 367. And, the ALJ found that Dr. Lorensen's own findings during Plaintiff's physical examination were likewise consistent with Dr. Lorensen's opinions. Thus, contrary to Plaintiff's arguments, the ALJ did not merely analyze one post-surgical medical record but instead adequately analyzed the record as a whole when evaluating the consistency of Dr. Lorensen's opinions.

Furthermore, there was substantial evidence in the record to support the ALJ's finding of consistency as to Dr. Lorensen's medical opinion — and on which he rested his determination of DIB. As previously stated, "[w]hen considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's." *Gray v. Colvin*, No. 24-CV-018, 2025 WL 25956, at *2 (S.D. Ga. Jan. 3, 2025) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) and *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)), *report and*

*recommendation adopted sub nom. Gray v. King*, No. CV 24-CV-018, 2025 WL 299794 (S.D. Ga. Jan. 24, 2025). In the decision, the ALJ explained that "objective evidence" supported his conclusion that Plaintiff could perform light work activity. Specifically, the ALJ explained that "there was no 12-month period of worsening symptoms or greater functional limitations" than those he outlined in his decision. ECF No. [6] at 28. The ALJ concluded that the "postoperative[]" record in this case showed a significant improvement in Plaintiff's right knee, *see id.* at 29, which he found was supported by (1) the postoperative diagnostic imaging showing that Plaintiff's joint replacement was well-seated and well-aligned, *see id.* at 300; (2) Plaintiff's statement that he was "extremely pleased with his progress[,]" *id.* at 335; (3) physical therapy records showing increased flexion and strength, as well as knee pain ranging "from zero out of ten, and at worst, three out of ten[,]" *see id.* at 342, 346, 350, 354, 357, 375, 377; (4) Plaintiff's physical therapy discharge notes from March 2022, showing that Plaintiff had reached his physical therapy goals, *see id.* at 398-99,[6] and that he "report[ed] feeling good and having no difficulties," *id.* at 415, among other records.

In addition, Plaintiff takes issue with the ALJ's finding that Plaintiff would need a cane for only rough or uneven surfaces, arguing that if the only basis for such a finding was Plaintiff's testimony, then it is unsupported by substantial evidence. According to Plaintiff, this is because he did not testify that he only uses the cane for walking on rough or uneven surfaces. However, Plaintiff's position misinterprets the ALJ's analysis. The ALJ noted that, according to Plaintiff's own statements in his physical therapy records from September 2021 through March 2022, he indicated that "he was no longer utilizing any assistive devices" and that in May 2022, Dr. Lorensen opined that "the cane was not a medically necessary device." ECF No. [6] at 26. Thus,

---

[6] The Court finds it worth mentioning that Plaintiff's discharge notes stated that his "discharge prognosis [was] excellent" and that he was "demonstrating full strength and [range of motion]."

16

rather than conclude that no cane whatsoever was needed, the ALJ accounted for Plaintiff's statements that he sometimes uses a cane, despite finding that his statements were "not fully supported" as to "intensity, persistence and limited effects." The Court declines to reevaluate the evidence as to whether a cane was needed with greater frequency and finds there was a substantial basis for the ALJ's finding.

Overall, the ALJ's careful review of the evidence shows that the decision is supported by substantial competent evidence. While Plaintiff argued that the ALJ should have considered other pieces of evidence in the record, the ALJ is not required to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review. *Gray*, 2025 WL 25956, at *6 (citation omitted); *see Dyer*, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole" (cleaned up)); 20 C.F.R. § 404.1520c(b)(1) ("Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."). And "[w]hile one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court." *Gray*, 2025 WL 25956, at *7. Rather, the "Court's job is . . . to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant." *Id.*

Next, contrary to Plaintiff's argument, the ALJ's failure to build a logical bridge is not a basis on which the Court can reverse the ALJ's decision or remand the case for further factual

17

development. As Defendant explained in its Motion for Summary Judgment, the "logical bridge" concept is a creation of the Seventh Circuit Court of Appeals, which the Eleventh Circuit has not adopted. *See* ECF No. [18] at 12; *Najjar v. Comm'r of Soc. Sec.*, No. 21-CV-170, 2022 WL 3714801, at *2 n. 3 (M.D. Fla. Aug. 29, 2022) ("As the Commissioner observes, the 'logical bridge' language used by [the plaintiff] is not found in the relevant regulations and has not been adopted by the Eleventh Circuit. Rather, the language originates in the Seventh Circuit[.] (citing *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021); other citation omitted). Even if the Court were to apply the "logical bridge" concept to the instant case, the outcome of the case would be unchanged as creating a "'logical bridge' simply means that 'an ALJ must articulate at some minimum level, [his] analysis of the evidence.'" *Moore v. Kijakazi*, No. 23-CV-206, 2023 WL 8187216, at *4 (M.D. Fla. Nov. 27, 2023) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). Here, the ALJ identified the specific pieces of evidence he relied upon when assessing Plaintiff's RFC and, because the quantum of evidence he relied upon was substantial, the Court finds that his decision and reasoning satisfied the "logical bridge" concept as articulated by the Seventh Circuit.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**, ECF No. [15], Defendant's Motion for Summary Judgment is **GRANTED**, ECF No. [18], and the ALJ's Decision is **AFFIRMED**. The Clerk of Court is directed to **CLOSE** this case. All pending motions are **DENIED AS MOOT**.

CASE NO. 24-CV-80275-ELFENBEIN

**DONE and ORDERED** in Chambers, in Miami, Florida, on March 13, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record